UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DAVID A. BICKFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12-cv-00017-JAW |
| | ) | |
| ALAN D. MARRINER, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR AUTHORITY TO
DEPOSIT FUNDS IN COURT REGISTRY OR, IN THE
ALTERNATIVE, TO IMPOSE CONDITIONS ON
THE PAYMENT OF FUNDS TO PLAINTIFF**

The Defendant shipowner of an action at admiralty law seeks to remit maintenance and cure funds to the court registry pursuant to Federal Rule of Civil Procedure 67 rather than directly to the seaman allegedly injured while working aboard the Defendant's vessel. Because maintenance and cure funds are meant to provide immediate financial relief to injured seamen while they are unable to work, the Court declines to allow such funds to be held in abeyance until the conclusion of the case. Accordingly, the shipowner's motion is denied.

**I.   BACKGROUND**

This case involves a seaman's action for damages arising out of an alleged injury aboard the lobster fishing vessel F/V COOL BREEZE (the Vessel) on February 12, 2010. *Compl.* (ECF No. 1). David Bickford alleges that he was employed by Alan Marriner as a "third-man" to wash gear for a limited three-day

period and that during that period he suffered an injury aboard the Vessel. *Def.'s Mot. for Authority to Deposit Funds in Court Registry or, in the Alternative, to Impose Conditions on the Payment of Funds to Pl.*, Ex. A, Bickford Dep. (ECF No. 10-1) at 40:17-41:17 (*Bickford Dep.*); *Compl.* ¶ 11. The Complaint alleges that Mr. Bickford "has incurred and will continue to incur expenses for his maintenance and cure" and that Mr. Marriner has failed to provide such maintenance and cure to Mr. Bickford. *Compl.* ¶¶ 24, 26. Specifically, Count IV of the Complaint alleges that Mr. Bickford made a demand to Mr. Marriner for the provision of maintenance and cure but that Mr. Marriner "has negligently, willfully, arbitrarily, and/or unreasonably failed to provide [Mr. Bickford] with maintenance and cure in a timely and adequate manner." *Compl.* ¶¶ 27-28.

On May 31, 2012, Mr. Marriner moved the Court for permission to pay maintenance and cure funds in the amount of $2,076 to the court registry instead of remitting those funds directly to Mr. Bickford or, in the alternative, for the Court to impose conditions on the payment of such funds to Mr. Bickford. *Def.'s Mot. for Authority to Deposit Funds in Court Registry or, in the Alternative, to Impose Conditions on the Payment of Funds to Pl.* (ECF No. 10) (*Def.'s Mot.*). In his motion, Mr. Marriner "absolutely denies that plaintiff worked for him on that date[1] or that his vessel was even in the water in February of 2010." *Def.'s Mot.* at 3. Nevertheless, Mr. Marriner says that on May 9, 2012, he offered to voluntarily issue

---

[1] In his motion, Mr. Marriner alternately lists the date of the alleged injury as February 12, 2010 and February 26, 2010, *Def.'s Mot.* at 1, 3, and the Complaint alleges a date of injury of February 12, 2010, *Compl.* ¶ 11. The exact date of injury is moot for purposes of this motion because Mr. Marriner denies that the Vessel was in the water in February of 2010. *Def.'s Mot.* at 3.

2

a check to Mr. Bickford so long as Mr. Bickford presented a "Not Fit for Duty Slip" that confirmed he was not able to work for seventy-seven days and so long as he did not claim that Mr. Marriner's payment waived Mr. Marriner's right to claim he did not owe the maintenance and cure obligation. *Def.'s Mot.* Attach. 4 at 1. Finally, if it were ultimately determined that Mr. Marriner was not responsible for the payment, Mr. Marriner wanted Mr. Bickford to agree to return the funds. *Id.* at 1-2. Mr. Bickford did not accept this payment with these conditions. *Def.'s Mot.* Attach. 5.

Asserting that he faces an "unfair conundrum," Mr. Marriner now worries that if he does not pay Mr. Bickford the maintenance and cure amounts that he contends he does not owe, he may be subject to punitive damages for failure to pay and, if he pays the maintenance and cure amounts to Mr. Bickford, and it is later determined that Mr. Bickford was not his employee, he would be "exposed to absolute loss of the funds." *Def.'s Mot.* at 4. If the Court declines to accept his funds, Mr. Marriner urges the Court to issue an order, compelling Mr. Bickford "to accept the funds as tendered with a signed acknowledgment or under such other conditions as may preserve defendant's right to return of the funds should he prevail." *Id.* at 4-5.

Mr. Bickford filed an opposition to the motion on June 19, 2012, arguing that granting the motion would be at odds with the General Maritime Law of maintenance and cure. *Pl.'s Objs. to Def.'s Mot. for Authority to Deposit Funds in Court Registry or, in the Alternative, to Impose Conditions on the Payment of Funds*

3

*to Pl.* (ECF No. 11) (*Pl.'s Opp'n*). Specifically, Mr. Bickford argues that because a vessel owner is required to pay maintenance for food and lodging to a seaman injured in the service of the vessel, to hold those funds in an escrow-like arrangement until the resolution of the case would defeat the very purpose of admiralty law's maintenance requirement, which is to provide financial relief to a seaman following an injury or illness until he has recovered and is again able to support himself. *Pl.'s Opp'n* at 3-4. He notes that "[a]s a matter of logic, the duty to provide an injured seaman with food and lodging is not met when the vessel owner places a sum of money sufficient to do so outside the seaman's reach until the end of trial." *Id.* at 3.

Mr. Bickford is not sympathetic to Mr. Marriner's "conundrum." Mr. Bickford acknowledges that it is not necessary for a vessel owner to begin maintenance and cure payments immediately upon demand because a shipowner "is entitled to investigate and require corroboration of the claim." *Id.* at 4 (quoting *Sullivan v. Tropical Tuna, Inc.*, 963 F. Supp. 42, 45 (D. Mass. 1997)). However, Mr. Bickford argues that this allowance is "tempered by a seaman's ability to seek [punitive] 'damages for the willful and wanton disregard of the maintenance and cure obligation.'" *Id.* (quoting *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 424 (2009)). Thus, according to Mr. Bickford, "at some point after demand for maintenance and cure is first made, a vessel owner's disregard of the cure obligation becomes willful, wanton or recalcitrant. When this point is reached is a finding of fact." *Id.* at 4-5.

4

Mr. Bickford points out that Mr. Marriner has consistently denied the provision of maintenance and cure for almost two years on the assertion that Mr. Bickford's claims are "entirely fabricated." *Id.* at 5. Now, he says, "long after any reasonable investigation of the Plaintiff's claim would have concluded, and long after the Plaintiff has brought suit against the Defendant, the Defendant seeks to deposit a sum of money with the Court and claims that by doing so he precludes the Plaintiff from further asserting a claim for punitive damages." *Id.* Mr. Bickford maintains that "[s]uch a result would strip the finder of fact of its role in determining whether a vessel owner's conduct has risen to the level of willful, wanton and recalcitrant conduct, and, more importantly, it would deprive injured seamen of the only mechanism that functions to keep a vessel owner's conduct reasonable." *Id.* Finally, Mr. Bickford points out that a deposit of the cash into the court registry "serves no useful purpose" because it would not give the Plaintiff access to the funds. *Id.* As for Mr. Marriner's right to recovery should Mr. Bickford lose, Mr. Bickford says that proof of actual payment "should be sufficient to protect the Defendant's ability to recoup payment should he prevail at trial" and the vessel owner's conundrum is "simply the result of the practical application of a legal paradigm that is, by design, more favorable to seamen." *Id.* at 5-6.

Mr. Marriner replied on June 29, 2012. *Def.'s Reply Mem. in Support of His Motion for Authority to Deposit Funds in Court* (ECF No. 12) (*Def.'s Reply*). In his reply, Mr. Marriner again asserts that he should be allowed to remit the maintenance funds to the court instead of directly to Mr. Bickford so that, if he

5

prevails at trial, he would "not be put in the position of having to initiate a collection action to obtain reimbursement of funds the plaintiff was not entitled to." *Def.'s Reply* at 2. Mr. Marriner argues that the "diametrically opposing facts here"—namely that Mr. Bickford alleges he was hurt while working on the Vessel on February 12, 2010 and that Mr. Marriner alleges that the Vessel was actually on land in his yard on that date—represent a "compelling need" for either payment to the court registry under Rule 67 or the imposition of other conditions upon payment of the maintenance funds. *Def.'s Reply* at 2.

## II. DISCUSSION

### A. Maintenance and Cure

Under the law of admiralty, a vessel owner is required to pay the food and lodging costs and necessary healthcare expenses of a seaman injured while in his or her service until the seaman's maximum medical recovery. *See, e.g., Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 74 n.2 (1st Cir. 2010) ("[a] venerable remedy created to protect seamen from the dangers of living and laboring at sea, maintenance and cure refers to the provision of, or payment for, food and lodging (maintenance) as well as any necessary health-care expenses (cure) incurred during the period of recovery from an injury or malady") (internal punctuation and citation omitted); *Whitman v. Miles*, 387 F.3d 68, 71 (1st Cir. 2004) ("[m]aintenance and cure is the traditional form of compensation paid to a seaman who becomes ill or injured aboard a vessel") (quoting *Richards v. Relentless, Inc.*, 341 F.3d 35, 40 n. 1 (1st Cir. 2003); *LeBlanc v. B.G.T. Corp.*, 992 F.2d 394, 396 (1st Cir. 1993) ("[f]rom

time immemorial, the law of the sea has required shipowners to ensure the maintenance and cure of seamen who fall ill or become injured while in service of the ship"). These provisions, termed "maintenance and cure," are "designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962). "Admiralty courts have been liberal in interpreting this duty 'for the benefit and protection of seamen who are its wards.'" *Id.* at 531-32 (citing to *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 529 (1938)). Furthermore, "[w]hen there are ambiguities or doubts, they are resolved in favor of the seaman," *Vaughan*, 369 U.S. at 532 (citing *Warren v. United States*, 340 U.S. 523 (1951)), and, as the Supreme Court has noted, a "shipowner's liability for maintenance and cure [is] . . . not to be defeated by restrictive distinctions nor 'narrowly confined.'" *Vaughan*, 369 U.S. at 532 (quoting *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 730 (1943)).

    **B.**    **Rule 67**

Federal Rule of Civil Procedure 67, entitled Deposit into Court, provides, in part:

> **(a) Depositing Property.** If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

FED. R. CIV. P. 67(a).  Originally, Rule 67 was limited to instances where the depositor of the funds claimed no interest in them, such as an interpleader action; however, in 1983, the Rule was amended to allow a litigant to deposit funds in court but "to continue to claim an interest in all or part of it."  FED. R. CIV. P. 67, advisory committee's note (1983 Am.).  By the Rule's express language, the Court has the discretion to approve the vessel owner's request.  In exercising this discretion, however, the Court is mindful that Rule 67, like all of the Federal Rules of Civil Procedure, "shall not abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b).  Thus, "[t]he Rule 67 procedure provides a place of safekeeping for disputed funds pending the resolution of a legal dispute, but it cannot be used as a means of altering the contractual relationships and legal duties of the parties." *LTV Corp. v. Gulf States Steel, Inc.*, 969 F.2d 1050, 1063 (D.C. Cir. 1992) (citation omitted).

Here, the Court concludes that to allow the vessel owner to deposit the amount of the maintenance and cure payment into the court registry would alter the balance of legal duties between the shipowner and the seaman.  As the Supreme Court explained in *Pacific S.S. Co. v. Peterson*, the obligation to provide maintenance and cure is, unlike negligence, not based on fault and is separate from and supplemental to compensatory damages.  278 U.S. 130, 136-38 (1928); *see also Boudreau v. S/V Shere Khan C*, 27 F. Supp. 2d 72, 83 (D. Me. 1998) ("[w]here a seaman suffers injury or falls ill while in the service of the ship, the owner and the ship are liable, regardless of fault, for the seaman's maintenance and cure").

Although the shipowner has the right to investigate whether the seaman is entitled to maintenance and cure payments, the vessel owner must not unduly delay its decision. For example, in *Atlantic Sounding*, the Supreme Court quoted a 1902 District of Washington case in which the captain's "'failure to observe the dictates of humanity' and obtain prompt medical care for an injured seaman constituted a 'monstrous wrong.'" 557 U.S. at 414 (quoting *The Troop*, 118 F. 769, 770-71, 773 (D.C. Wash. 1902)).

Furthermore, "[i]n light of the realities of the current health care system, . . . an injured seaman often will be unable to obtain necessary medical treatment unless he can first demonstrate the ability to pay." *Sullivan*, 963 F. Supp. at 45. In *Sullivan*, the District Court concluded that a delay of only one month before approving surgery was "both unreasonable and willful." *Id.* To encourage a vessel owner to make a prompt decision about maintenance and cure payments and to make those payments when obligated to do so, the law provides for the imposition of punitive damages for the "willful and wanton disregard of the maintenance and cure obligation." *Atl. Sounding*, 557 U.S. at 424.

In this case, Mr. Bickford claims he was injured on February 12, 2010 and now, approximately two and a half years after his injury, he has still not received maintenance and cure payments from the vessel owner. If proven, Mr. Marriner's contention—that Mr. Bickford was not employed as a seaman on the date of his injury—would be an absolute bar to any claim for maintenance and cure payments so the amount that Mr. Marriner proposes to deposit in court would become

9

effective only if the fact finder found that Mr. Bickford was employed by Mr. Marriner at the time of his injury and that he was entitled all along to maintenance and cure payments. In these circumstances, depending on the evidence, a fact finder could determine that Mr. Marriner's multi-year refusal to recognize his maintenance and cure obligations was willful and wanton and merits the imposition of punitive damages. To accept a Rule 67 deposit would alter the encouragement that the Supreme Court authorized in *Atlantic Sounding* and instead would allow the vessel owner to engage in an unwarranted delay in the provision of essential medical and subsistence payments to an injured seaman simply by depositing the disputed amount with the court.

As to Mr. Marriner's supposedly unfair conundrum, the answer is that the vessel owner must know his seamen. If Mr. Bickford was not Mr. Marriner's seaman, there is no issue and no conundrum. If Mr. Bickford was Mr. Marriner's seaman and Mr. Marriner did not know it or refused to admit it, Mr. Marriner's conundrum is one of his own making.

In these circumstances, the Court exercises its discretion against the vessel owner and declines to approve a Rule 67 deposit in the court registry of the amount of the maintenance and cure payments in this case.

### III.   CONCLUSION

The Court DENIES Defendant's Motion for Authority to Deposit Funds in Court Registry or, in the Alternative, to Impose Conditions on the Payment of Funds to Plaintiff (ECF No. 10).

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 8th day of August, 2012