UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DAVID A. BICKFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12-cv-00017-JAW |
| | ) | |
| ALAN D. MARRINER, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTIONS IN LIMINE**

In this admiralty case, David A. Bickford alleges that he sustained chemical burns to his wrists and hands on February 12, 2010, while washing lobster buoys aboard Alan D. Marriner's vessel, the F/V COOL BREEZE.  Mr. Marriner denies all liability, asserting that Mr. Bickford has not worked for him since approximately 2002 and that the F/V COOL BREEZE was not even in the water on February 12, 2010.  The parties have submitted and the Court has ruled on six motions in limine in anticipation of trial.

**I.     EVIDENCE OF THE EXISTENCE OF INSURANCE**

Mr. Marriner moves in limine to exclude any evidence of his own liability insurance coverage as well as any evidence of the Plaintiff's lack of health insurance.  *Def. Alan D. Marriner's Mot.* in Limine *to Exclude Any Evidence of the Existence of Insurance* (ECF No. 33) (*Def.'s First Mot.*).  Regarding evidence of Mr. Bickford's lack of health insurance, there is no disagreement.  Mr. Bickford assures the Court that he "recognizes the irrelevant and prejudicial nature of this evidence"

and that he has "no intention of mentioning or offering evidence that he lacked medical insurance coverage at the time of the injury." *Pl.'s Opp'n to Def.'s Mot. in Limine to Exclude Any Evidence of the Existence of Insurance*, 2-3 (ECF No. 38) (*Pl.'s First Opp'n*).  Based on the agreement of the parties, the Court grants Alan Marriner's motion in limine regarding the admissibility of evidence of Mr. Bickford's lack of medical insurance.

Regarding whether Mr. Marriner had liability insurance, Mr. Bickford agrees that such evidence is generally inadmissible but stresses that there is "a myriad of circumstances" that "could render the Defendant's liability insurance policy admissible." *Id.* at 2.  He posits as an example the Defendant's putting "his finances in issue by testifying or otherwise presenting himself as someone without adequate finances to pay any damage award." *Id.*  Mr. Bickford thus urges the Court to deny the motion in limine "as not yet ripe for adjudication." *Id.*

As the parties recognize, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." FED. R. EVID. 411.  Mr. Bickford is correct that Rule 411 prohibits the admission of such evidence only when a party seeks to introduce it as proof of fault or negligence.  *See id.* ("But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control"); *see, e.g., Conde v. Starlight I*, 103 F.3d 210, 213-14 (1st Cir. 1997) (holding that repeated references to a witness as an "adjuster" did not contravene Rule 411 because they were intended to show the possible bias or

2

prejudice of the witness rather than to prove negligence).  However, as the Advisory Committee on Evidence Rules explained, Rule 411 is based on "the feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds."  FED. R. EVID. 411 advisory committee's note (1972).  As it is possible that the evidence or argument at trial will justify the admission of evidence of liability insurance, the Court dismisses without prejudice this aspect of Mr. Marriner's motion.  The Court cautions Mr. Bickford, however, that before he seeks to introduce such evidence, he must alert the Court and explain why the potential prejudice to Mr. Marriner would not substantially outweigh its probative value.[1]  *See* FED. R. EVID. 403.

## II.   PAUL MCFARLAND'S DEPOSITION

In his second motion in limine, Mr. Marriner seeks to exclude any evidence from or reference to the deposition of Paul McFarland.  *Def. Alan D. Marriner's Mot. in Limine to Exclude Evidence Proffered Through the Deposition of Paul McFaraland* [sic] (ECF No. 39) (*Def.'s Second Mot.*).  Mr. Bickford opposes this motion.  *Pl.'s Opp'n to Def.'s Mot. in Limine to Exclude Evidence Proffered Through the Deposition of Paul McFarland* (ECF No. 40) (*Pl.'s Second Opp'n*).

Mr. Marriner represents that "[t]he primary factual dispute in this action is whether or not Defendant's lobster boat, F/V COOL BREEZE was even in the water

---

[1]      Mr. Bickford's counsel was plaintiff's counsel in *Conde v. Starlight I* and according to the First Circuit, he repeatedly referred to one of the witnesses as an "adjuster" during direct and redirect examination and in closing argument.  *Id.* 103 F.3d at 213-14.  The First Circuit concluded these references were not improper because the "entire defense centered on [the adjuster's] credibility."  *Id.* at 214.  No similar circumstances appear in this case and the Court is decidedly skeptical about Mr. Bickford's contention that evidence of liability insurance might be admissible.

on the date plaintiff says he was injured while working aboard her." *Def.'s Second Mot.* at 2.  Relevant to this dispute is an invoice dated February 15, 2010, for 242.09 gallons of diesel fuel.  *Pl.'s Second Opp'n* Attach. 2, *Fuel Invoices of the Def. Provided by the O'Hara Corp.*, 2 (ECF No. 40-2).  On its face, the invoice suggests that Journey's End Marina, in Rockland, Maine, dispensed fuel on February 8, 2010, to the boat "Cool Breeze."  *Id.*  Mr. Bickford alleges that his injury occurred on board the F/V COOL BREEZE on February 12, 2010.  *Pl.'s Compl. and Demand for Jury Trial* ¶¶ 3-11 (ECF No. 1) (*Compl.*).

Seeking to rebut the obvious implications of this invoice, Mr. Marriner states in his brief that he "has a scallop boat in addition to the COOL BREEZE, which is a lobster boat, and purchases fuel for it at Journey's End Marina as well."  *Def.'s Second Mot.* at 3.  According to Michael Davee, the General Manager of Journey's End Marina, the "fact that the vessel name 'COOL BREEZE' appears on a fuel invoice to the account of Mr. Marriner for a purchase of fuel in February of 2010 does not establish that that vessel received the fuel charged on that invoice."  *Id. Attach. 2*, Aff. of Michael Davee, ¶ 7 (ECF No. 39-2) (*Davee Aff.*).

Mr. Bickford provided formal notice to the O'Hara Corporation (O'Hara), which owned Journey's End Marina, that it would be deposed on September 14, 2012, regarding the February 2010 invoice and fuel sale.  *See Pl.'s Second Opp'n Attach. 3*, Pl.'s Second Notice of Dep. (ECF No. 40-3).  Pursuant to Federal Rule of Civil Procedure 30(b)(6), Mr. Bickford requested that O'Hara designate one or more persons to testify on its behalf.  *Id.*; *see* FED. R. CIV. P. 30(b)(6).

O'Hara's General Manager, Paul McFarland, Sr., appeared to testify on O'Hara's behalf, although Mr. McFarland acknowledged that "O'Hara Corporation [hadn't] really officially designated" him to testify. *Pl.'s Second Opp'n Attach. 4*, Tr. Testimony from Dep. of Paul McFarland, Sr., 6:20-25 (ECF No. 40-4) (*McFarland Dep.*). Mr. Marriner now seeks to exclude, on three grounds, the entirety of Mr. McFarland's deposition.

### A.      Rule 30(b)(6)

Mr. Marriner first contends that Mr. McFarland was not competent to testify about the invoices. *Def.'s Second Mot.* at 3-4. He argues that "[d]uring the deposition, it became clear that the deponent did not have the requisite knowledge to provide information about how the accounts were set up and what could or could not be concluded from the information appearing on the Journey's End Marina invoices." *Id.* at 4. He maintains that, given Mr. McFarland's lack of knowledge, Mr. Marriner "had a right to continue the deposition and ask questions of" Pam Lea and Mike Davee, both of whom Mr. McFarland said knew more about Journey's End Marina's account systems than he did. *Id.*

Although Mr. Marriner does not specifically mention Rule 30(b)(6), the substance of this objection seems to be that O'Hara improperly designated Mr. McFarland under Rule 30(b)(6) because two other employees—namely, Ms. Lea and Mr. Davee—were more knowledgeable than Mr. McFarland about the designated subjects of the deposition. *Def.'s Second Mot.* at 4 ("If it becomes apparent at the deposition that the witness lacks knowledge, the organization must designate an

appropriate witness") (citing *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 540 (D. Nev. 2008)).  In response, Mr. Bickford denies that Rule 30(b)(6) requires an "official" designation and asserts that Mr. McFarland did indeed have the requisite knowledge to be a competent witness for O'Hara.  *Pl.'s Second Mot.* at 5-9.

Rule 30(b)(6) provides that "[t]he named organization must [ ] designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf. . . . The persons designated must testify about information known or reasonably available to the organization."  FED. R. CIV. P. 30(b)(6).  Courts have held that Rule 30(b)(6) requires deposed corporations to both properly identify a capable witness and adequately prepare the witness to answer questions about the designated topics.  *See* 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2103, at 458-461 (3d ed. 2010) (WRIGHT, MILLER, AND MARCUS).

On the merits of Mr. Marriner's objection, this appears to be a close case.  Mr. McFarland's testimony shows that Mr. McFarland was knowledgeable generally about Journey's End Marina's business practices but suggests that O'Hara made no attempt to identify the most appropriate designee or to prepare Mr. McFarland to testify.  Mr. McFarland testified that he was the General Manager of O'Hara and that he had worked at O'Hara in various capacities since the early to mid-1970s, starting as a general laborer on the dock, and including a stint as a plant superintendent; moreover, he had personal experience pumping gas for vessels and

6

had personal knowledge of O'Hara's key-based self-serve pumping system and of the way O'Hara generates fuel invoices. *McFarland Dep.* at 4:17-25, 5:16-6:3, 11:17-13:13 (ECF No. 40-5). However, Mr. McFarland also testified that O'Hara "[hadn't] really officially designated" him to testify, that Pam Lea knew more than he did about "the assigning of account information to a fuel account linked to a key," and that Mike Davee knew more than he did about "the accounting system and the assignment of a key." *Def.'s Second Mot.* at 4.

To the extent that Mr. McFarland was not prepared to testify about all relevant "information known or reasonably available" to O'Hara, O'Hara arguably fell short of its obligations under Rule 30(b)(6). FED. R. CIV. P. 30(b)(6). On the other hand, Rule 30(b)(6) does not require the designee to have personal knowledge on the designated subject matter. *See* 8A WRIGHT, MILLER, AND MARCUS § 2103, at 455 n.8; *Vegas Constr.*, 251 F.R.D. at 538.

Even if Mr. Marriner has the better argument on the merits of his Rule 30(b)(6) objection, disputes over Rule 30(b)(6) are typically resolved in discovery. *See* 8A WRIGHT, MILLER, AND MARCUS § 2103, at 468 ("One remedy . . . is to require that the corporation designate additional witness to provide the missing information"). Here, by contrast, Mr. Marriner is asking for much stronger medicine: he wants the Court to exclude the entire deposition.

This medicine is much too strong, especially because Mr. Marriner had and still has a number of less drastic remedies. First, assuming Mr. Marriner had, as he asserts, "a right to continue the deposition and ask questions of the more

knowledgeable individuals," he slept on that right. *Def.'s Second Mot.* at 4. Furthermore, even though the Rule 30(b)(6) deposition was completed just before the expiration of the extended discovery period, Mr. Marriner could have sought a brief further extension of the deadline to complete depositions of Ms. Lea or Mr. Davee, but he failed to do so.[2] Finally, nothing prevents Mr. Marriner from calling Ms. Lea and Mr. Davee as witnesses during the upcoming trial and, in fact, he has listed them as potential witnesses in his pretrial memorandum.[3] *Def. Alan D. Marriner's Final Pretrial Mem.*, 3 (ECF No. 28) (*Def.'s Final Pretrial Mem.*). If it is true, as Mr. Marriner claims, that Mr. McFarland's deposition testimony reveals that he is not as familiar as he should be with the invoices, the limits of his knowledge will become readily apparent when contrasted with the testimony of Ms. Lea and Mr. Davee. Under these circumstances, the Court declines to exclude the entire Rule 30(b)(6) deposition.

## B.    Lack of Foundation

Mr. Marriner's second ground for excluding Mr. McFarland's testimony is that Mr. McFarland "lacks knowledge, and therefore a foundation, to testify to the facts at issue." *Id.* at 5. Mr. Marriner seeks to exclude the entire deposition on this ground, *id.* at 6 n.3, but ends his motion by asking the Court in the alternative to exclude Mr. McFarland's testimony "specifically with respect to identification of what vessel fuel sold by Journey's End Marina was pumped into." *Id.* at 7. Mr.

---

[2]    The original discovery deadline was August 14, 2012. *Scheduling Order*, 2 (ECF No. 9). On August 28, 2012, the parties filed a joint motion to reopen discovery for two weeks, to September 15, 2012, which was granted the same day. *Jt. Mot. to Reopen Disc.* (ECF No. 15); *Order* (ECF No. 18).
[3]    So has Mr. Bickford. *Pl.'s Final Pretrial Mem.*, 4 (ECF No. 29).

Bickford does not respond separately to this objection in his opposition.  *See Pl.'s Second Opp'n* at 1-9.

Mr. Marriner's foundation-based objection lacks merit as to nearly all of Mr. McFarland's testimony.[4]  As the Court has already noted, Mr. McFarland testified that he was the General Manager of O'Hara and that he had worked at O'Hara in various capacities since the early to mid-1970s, starting as a general laborer on the dock, and including a stint as a plant superintendent.  *McFarland Dep.* at 4:17-25, 5:16-6:1.  His testimony revealed that he has personal experience pumping gas for vessels.  *Id.* at 6:2-3.  It is clear from his testimony that he has personal knowledge of O'Hara's key-based self-serve pumping system and of the way O'Hara generates fuel invoices.   *Id.* at 11:17-13:13 (ECF No. 40-5).   The Court overrules Mr. Marriner's objection generally as to Mr. McFarland's testimony.

Mr. Marriner specifically objects on foundational grounds to the following questions:

> [MR. GILZEAN:]  Okay.  Okay.  Based on your understanding of how O'Hara Corporation dispenses its fuel and invoices, is it your position — is it your belief that the fuel that was dispensed, the 242.09 gallons, ended up in the F/V Cool Breeze?
>
> MR. WELTE:  Objection, foundation.  He has already said he can't.
>
> [MR. GILZEAN:]  I am asking about your belief based on how you understand the system works, your system, your invoicing system, your dispensing system.
>
> MR. WELTE:  Objection, foundation.

---

[4]     The Court has not been given a complete transcript of Mr. McFarland's deposition.

9

*Def.'s Second Mot.* at 5.   During Mr. Marriner's own deposition, Mr. Marriner explained that O'Hara Corporation issued fuel keys to its regular customers, like Mr. Marriner, and that the customer could then come to the pump, insert the fuel key, and dispense fuel charged to his account.   *Id.* at 2.   As Mr. McFarland acknowledged, a person with the F/V COOL BREEZE customer key could pump gas into any vessel.   *Id.* at 5.   Thus, based on the invoice alone, Mr. McFarland could not even say that Alan Marriner pumped the gas much less that it was pumped into the F/V COOL BREEZE.   *Id.*   In light of this testimony, and given Mr. McFarland's acknowledgement that he lacked direct knowledge of the fuelings in question, *see id.*, the Court agrees that Mr. McFarland would be required to speculate if he testified as to whether O'Hara Corporation dispensed fuel into the F/V COOL BREEZE on February 15, 2010.   The Court therefore sustains Mr. Marriner's objection to the questions from 18:4 through 18:15 of the O'Hara Corporation deposition and grants Mr. Marriner's motion in limine on this issue.[5]

### C.   Attorney Gilzean's Representations Regarding Use of the Deposition

Finally, Mr. Marriner argues that the Court should hold Mr. Bickford's attorney, Jonathan E. Gilzean, to his alleged representation that he would not use Mr. McFarland's deposition at trial.   *Def.'s Second Mot.* at 6-7.   Mr. Marriner noted during Mr. McFarland's deposition that he was reserving his right to "either notice other depositions or to continue [Mr. McFarland's] deposition."   *Id.* at 6.   However, according to Mr. Marriner's attorney, William H. Welte, when he contacted

---

[5]       Curiously, neither party submitted Mr. McFarland's answer.

Attorney Gilzean shortly after the deposition to discuss next steps, Attorney Gilzean "indicated that given the obvious fact of the witness's lack of knowledge, the deposition would not be used." *Id.* Attorney Gilzean has a slightly different recollection: that what he actually said during this conversation was that he "*did not know* what evidence he would use at trial" and that he "*did not think* he would use the fuel receipts." *Pl.'s Second Opp'n* at 4 (emphasis in original); *id. Attach. 1*, Aff. of Jonathan E. Gilzean, ¶¶ 10-11 (ECF No. 40-1) (*Gilzean Aff.*). Attorney Gilzean also declares that Attorney Welte stated during that conversation that he "would reread the transcripts and get back to me," but that "[n]o further discussions were held on this topic until" the November 14, 2012 email discussed below. *Gilzean Aff.* ¶¶ 13-14.

Mr. Marriner reports that "during the pre-trial conference," which took place on November 8, 2012, "when asked by the Magistrate Judge if there was going to be any testimony introduced through deposition testimony, plaintiff's counsel consistently responded in the negative." *Def.'s Second Mot.* at 6; *Minute Entry* (ECF No. 30). Again, Attorney Gilzean's account differs from Mr. Marriner's: "During the final pretrial conference . . . I stated solely that I did not foresee any need for the use of video depositions in this case, not that I would not seek to use deposition transcript testimony recorded stenographically." *Gilzean Aff.* ¶ 15. Only in an email sent on November 14, 2012, claims Mr. Marriner, did Attorney Gilzean "inform defendant that he was not standing by the earlier representation, stating 'I know I indicated that I didn't think we would use any of the stuff from O'Hara

Corporation but after speaking with David Anderson, we are going to seek to have the Feb 15, 2010 invoice admitted.'" *Def.'s Second Mot.* at 6-7.   Attorney Gilzean does not dispute Mr. Marriner's characterization of his email.  *Gilzean Aff.* ¶ 14.

Attorneys are constantly talking to each other and it is not that uncommon that, as adversaries, they emerge from the same conversation with different impressions of what was said.   Attorney Welte interpreted Attorney Gilzean's statement that he thought he would not use Mr. McFarland's deposition transcript as an affirmative promise not to do so; Attorney Gilzean viewed his statement as tentative.   There are ways in which an attorney can extract an enforceable promise from the other side.  In this case, however, the colloquy between Attorney Welte and Attorney Gilzean is too ambiguous to be enforceable.

Regarding representations made at the Pretrial Conference about the use of the McFarland deposition, the Court observes that Mr. Marriner failed to raise this issue in his Final Pretrial Memorandum and Mr. Bickford listed the Rule 30(b)(6) deposition of O'Hara Corporation and its exhibits as a potential trial exhibit.  *Def.'s Final Pretrial Mem.* at 1-6; *Pl.'s Final Pretrial Mem.* at 6.  The Magistrate Judge's Final Pretrial Order makes no mention of any agreement not to use Mr. McFarland's deposition and to the contrary contains the standard orders regarding the use of both videotaped and transcribed depositions at trial.  *Report of Final Pretrial Conf. and Order*, 4-5 (ECF No. 31).  There is no indication on the docket that Mr. Marriner objected to the contents of the Final Pretrial Order.   If Mr. Marriner wished to preserve an objection to the use of the Rule 30(b)(6) transcript

12

at trial, he should have raised this issue in his Final Pretrial Memorandum and, having raised it at the Pretrial Conference, he should have made certain that the parties' agreement was ratified by the Court in its Pretrial Order.

The Court will not intervene in this private squabble.

### D.    Conclusion

The Court sustains Mr. Marriner's objection to the questions from lines 18:4 through 18:15 of the O'Hara Corporation deposition and grants Mr. Marriner's motion in limine to this extent but denies Mr. Marriner's motion as to the rest of the deposition.

## III.    TREATMENT FOR ALCOHOL ABUSE

Mr. Bickford moves in limine to exclude any documents or testimony relating to his treatment for alcohol abuse. *Pl.'s Mot. in Limine Regarding Treatment for Alcohol Abuse* (ECF No. 34) (*Pl.'s First Mot.*).   He asserts that the patient-psychotherapist privilege applies to such evidence and that, in any event, evidence of such treatment is not relevant to any issue in the case and its admission would unfairly prejudice Mr. Bickford.   *Id.* at 1-3.   Mr. Bickford asks the Court to "preclude the Defendant from mentioning or offering into evidence any documents or testimony relating to treatment for alcohol abuse."   *Id.* at 3.   Mr. Marriner opposes the motion by positing ways in which evidence of alcoholism may become relevant at trial and by submitting that the order sought is "overly broad" since it "seeks to limit all evidence of alcoholism."   *Def.'s Resp. in Opp'n to Pl.'s Mot.* in

Limine *Regarding Treatment for Alcohol Abuse*, 1-3 (ECF No. 44) (*Def.'s First Opp'n*).

The parties' arguments are like ships in the night. Two observations are in order. First, the motion seeks to exclude evidence of alcohol treatment, not of alcoholism. Second, the Magistrate Judge has already ruled that the patient-psychotherapist privilege protects any communications with a counselor, and Mr. Marriner did not object to this ruling. *Order on Responses to Order to Show Cause* (ECF No. 22). The patient-psychotherapist privilege protects only communications with a counselor; as Mr. Bickford appears to acknowledge, it does not preclude a party from introducing evidence of the fact of alcohol treatment. *Pl.'s First Mot.* at 2 ("the issue is whether the Defendant should be allowed to ask the Plaintiff the question in the first instance or refer to such treatment at any point during the trial"). Mr. Bickford contends that evidence of the fact of treatment is "in no way relevant to any fact at issue in this case" and that, even if it is relevant, it should be excluded as unfairly prejudicial under Federal Rule of Evidence 403. *Id.* at 2-3.

The Court agrees with Mr. Bickford and perhaps with Mr. Marriner as well that evidence of the details of Mr. Bickford's treatment for alcoholism is not admissible. The Court therefore grants Mr. Bickford's motion in limine to exclude evidence—whether by testimony or documents—of any specifics of Mr. Bickford's treatment for alcohol abuse.[6] The Court dismisses the motion without prejudice

---

[6]     Of course, if Mr. Bickford opens the door to this line of questioning, Mr. Marriner may be allowed to follow up.

insofar as it seeks to prohibit any reference to the fact of treatment for alcohol abuse or any reference to alcoholism.[7]

## IV.   CHILD SUPPORT OBLIGATIONS

Mr. Bickford's second motion in limine seeks to exclude any documents or testimony referring to his court-ordered child support obligations.  *Pl.'s Mot. in Limine Regarding Child Support Obligation* (ECF No. 35) (*Pl.'s Second Mot.*).  Mr. Bickford notes that the Magistrate Judge already determined that a May 2007 document concerning his child support obligations was relevant because it made mention of his employer in May 2007.  *Id.* at 1-2.  The Magistrate Judge ordered Mr. Bickford to produce this document in discovery.  *See Report of Hearing and Order Re: Discovery* (ECF No. 17).  Mr. Bickford now contends that Mr. Marriner may introduce evidence of his employer in May 2007 by other means—namely through an answer to one of Mr. Marriner's interrogatories.  *Pl.'s Second Mot.* at 2. Thus, argues Mr. Bickford, the probative value of such evidence is substantially outweighed by the danger of unfair prejudice.  *Id.* at 2-3.  Mr. Marriner's main contention in opposition is that the order sought by Mr. Bickford—which would exclude not only the May 2007 document but all documents or testimony referring to child support obligations—would be unnecessarily broad and would not be able to account for unforeseen developments at trial.  *Def.'s Resp. in Opp'n to Pl.'s Mot.* in

---

[7]     The parties have not squarely raised and the Court has not reached whether evidence that Mr. Bickford is an alcoholic would be admissible.  This issue is a difficult one and depends largely on trial context.  *See, e.g., Eaton v. Hancock Cnty.*, No. 1:08-cv-00370-JAW, 2011 U.S. Dist. LEXIS 67092, *14-15 (D. Me. June 22, 2011); *Orlowski v. Eriksen*, No. 07 C 4015, 2009 U.S. Dist. LEXIS 66893, *4-7 (N.D. Ill. July 31, 2009).  However, the potential for prejudice is great and the probative value questionable.  Before Mr. Marriner seeks to admit such evidence, he must first approach the Court.

Limine *Regarding Treatment for Alcohol Abuse*, 1-3 (ECF No. 43) (*Def.'s Second Opp'n*).

Assuming its relevance, the Court does not agree with Mr. Bickford's blanket assertion that the fact that a person has been ordered to pay child support is necessarily prejudicial; child support orders are routinely issued in divorce cases against the non-custodial parent.   The Court agrees with Mr. Bickford's general proposition that evidence that a personal injury plaintiff is in arrears in his or her child support payments would not generally be admissible.  *See Eaton*, 2011 U.S. Dist. LEXIS 67092 at *23; *United States v. Newell*, 584 F. Supp. 2d 272, 274 (D. Me. 2008) ("[T]he Court believes that overdue child support or child welfare payments may not pass Rule 403 muster").   Here, Mr. Marriner contends that the state of Maine Department of Health and Human Services (DHHS) document dated May 2007 mentions that Mr. Bickford was employed by a particular employer at that time.  *Def.'s Second Opp'n* at 2.  Mr. Marriner also maintains that Mr. Bickford used a similar document from 2006 during his deposition examination of his fiancée Crystal Lalli as to her knowledge of his employment.   *Id.*  Mr. Marriner observes that Ms. Lalli has been listed as a witness at trial and he proposes to question her at trial in the same way Mr. Bickford questioned her at the deposition.  *Id.*

The parties have not provided the Court with a copy of the contested DHHS document or Mr. Bickford's answer to the interrogatory.   Without reviewing the documents and without a trial context, the Court will not rule on this matter and dismisses the motion.

However, the Court alerts the parties that it does not consider the DHHS document necessarily inadmissible. The fact that Mr. Bickford made a representation about his employment as of May 2007 in a state form, perhaps under oath, might be relevant to whether he was later employed by Mr. Marriner. At the same time, the fact that Mr. Bickford was employed by a particular employer in 2007—without more—is weak evidence that he was still employed by that employer in 2010. All of this may become clearer during trial.

Without prejudging admissibility, the Court urges counsel to consider entering into a stipulation that avoids the prejudicial impact of child support arrearages but allows Mr. Marriner to present evidence to the jury that Mr. Bickford represented to a state agency under oath (if he did) that he was employed by a particular employer in May 2007. Mr. Marriner must approach the Court if he seeks to introduce this evidence. For now, the Court dismisses without prejudice Mr. Bickford's motion in limine.

## V.   COLLATERAL SOURCE RULE

Mr. Bickford's third motion in limine seeks to exclude any documents or testimony referencing the fact that medical bills relating to his injury have been paid by MaineCare. *Pl.'s Mot. in Limine Regarding Collateral Source Rule* (ECF No. 36) (*Pl.'s Third Mot.*). He claims that, as this is a personal injury suit brought pursuant to the Jones Act and general maritime law, both the substantive and evidentiary components of the collateral source rule apply. *Id.* at 1-2. He says that MaineCare is a "textbook collateral source." *Id.* at 2.

17

"Under the collateral source rule, the plaintiff need not offset his or her recovery from the defendant by the amount of any benefits received from a source collateral to the defendant." *McGrath v. Consolidated Rail Corp.*, 136 F.3d 838, 840 (1st Cir. 1998).  Accordingly, the so-called evidentiary component of the rule—which in federal court amounts to little more than a straightforward application of Federal Rules of Evidence 401, 402, and 403—generally prohibits the admission of evidence of the receipt of benefits from a collateral source.  *See Fitzgerald v. Expressway Sewerage Constr., Inc.*, 177 F.3d 71, 74 (1st Cir. 1999) ("the Federal Rules of Evidence (and in particular Rules 401, 402, and 403) are malleable enough to deal with the principal evidentiary issues contemplated by the collateral source rule: relevancy and unfairly prejudicial effect").  As the First Circuit recently reiterated:

> The collateral source rule is meant to guard against two risks: that after a jury has found liability and goes on to assess damages it will deduct from the appropriate award whatever compensation a plaintiff is receiving for injuries from a source other than a liable defendant (health insurance benefits, say), and the more general risk that a jury will regard the receipt of such benefits as a reason to avoid finding liability at all in a close case.

*Crowther v. Consolidated Rail Corp.*, 680 F.3d 95, 98-99 (1st Cir. 2012) (Souter, J.). At the same time, "the rule is not absolute and courts have carved out exceptions to the collateral source doctrine."  *McGrath*, 136 F.3d at 840; *see, e.g., Crowther*, 680 F.3d at 98-100 (finding no reversible error in the admission of evidence of collateral source benefits to show malingering); *McGrath*, 136 F.3d at 841 (same); *Falconer v. Penn Maritime, Inc.*, 397 F. Supp. 2d 62, 67 (D. Me. 2005) (noting that if the plaintiff "opens the door" at trial, evidence of the receipt of collateral source benefits may become admissible).

18

In his opposition, Mr. Marriner appears to concede that the evidence at issue is generally inadmissible "with respect to the Jones Act count," arguing only that such evidence would become relevant if Mr. Bickford offers his medical bills "as part of [his] case under Counts III and/or IV," which allege that Mr. Marriner failed to provide maintenance and cure. *Def.'s Opp'n to Pl.'s Mot.* in Limine *Re Collateral Source Rule*, 3 (ECF No. 41) (*Def.'s Third Opp'n*).   According to Mr. Marriner, "[p]ayment by a third-party or through a public benefit program relieves the defendant of any obligation to pay maintenance and cure," and "[s]uch payments are not subject to the collateral source rule." *Id.*  Mr. Bickford does not appear to take a contrary view, as he is not pursuing payment of his medical bills under a maintenance and cure theory.  *See id.* at 2-3; *Report of Final Pretrial Conference and Order* at 2 (ECF No. 31) (reporting that "Plaintiff's Claimed Special Damages" include "[m]edical bills of $1,081 on negligence claim only").

Thus, it appears that the parties agree both that it would generally be improper for Mr. Marriner to introduce evidence of the MaineCare payments with respect to the Jones Act count, and that Mr. Marriner need not introduce such evidence with respect to the maintenance and cure counts, since Mr. Bickford will not be seeking recovery of his medical bills under those counts.   On this understanding, the Court grants Mr. Bickford's third motion in limine.   If Mr. Bickford opens the door—by putting his medical bills in issue on the subject of maintenance and cure or otherwise—this ruling will not prevent Mr. Marriner from seeking the Court's permission to introduce evidence of the MaineCare payments.

19

## VI.    CRIMINAL CONVICTIONS

Mr. Bickford's fourth motion in limine seeks to exclude any documents or testimony referencing his five prior misdemeanor convictions. *Pl.'s Mot. in Limine Regarding Criminal Convictions* (ECF No. 37) (*Pl.'s Fourth Mot.*).   A Criminal History Record issued by the Maine State Bureau of Identification reveals that Mr. Bickford has been convicted of five misdemeanor crimes, all of which are more than ten years old. *Id.* at 1-2.

Mr. Bickford acknowledges that Federal Rule of Evidence 404(b) permits the admission of evidence of a prior conviction for a purpose other than propensity to commit crime—such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 2; FED. R. EVID. 404(b).  According to Mr. Bickford, however, "none of the convictions are relevant to any of the exceptions listed in FED. R. EVID. 404(b)(2)." *Pl.'s Fourth Mot.* at 2.  Mr. Bickford contends further that the Federal Rules of Evidence prohibit the use of the convictions to impeach his testimony, since each conviction was for a crime that did not involve a dishonest act or false statement and that was not punishable by death or by imprisonment for more than one year.  *Id.* at 3; *see* FED. R. EVID. 609(a). Finally, Mr. Bickford maintains that even if his prior convictions are found to be relevant to an issue in the case, they should be excluded under Rule 403.  *Pl.'s Fourth Mot.* at 3-4.

While appearing to agree with Mr. Bickford's view that his prior convictions are inadmissible, Mr. Marriner asks the Court to deny the motion "with respect to

Rule 404 pending proffer of evidence and unfolding of theories and defenses at trial." *Def.'s Response in Opp'n to Pl.'s Mot.* in Limine *Regarding Criminal Convictions*, 2 (ECF No. 42) (*Def.'s Fourth Opp'n*). "Until evidence is offered," contends Mr. Marriner, "it cannot be determined whether the [Rule 404(b) exceptions] might arise during the trial." *Id.* at 1. Mr. Marriner does not dispute Mr. Bickford's contention that evidence of the prior convictions cannot be used to impeach Mr. Bickford's testimony under Rule 609.

The Court agrees with Mr. Bickford that evidence of these old misdemeanor convictions is inadmissible absent unusual circumstances. At the same time, the Court agrees with Mr. Marriner that it cannot absolutely rule out the possibility that this evidence will become relevant under Rule 404(b) based on developments at trial. If he seeks to introduce evidence of the convictions, Mr. Marriner would face a high bar in convincing the Court that admission is proper. The Court grants the motion as to Rule 609 and dismisses it without prejudice as to Rule 404(b). Mr. Marriner must alert the Court if he intends to mention or introduce evidence of Mr. Bickford's prior convictions during trial.

## VII.   CONCLUSION

The Court GRANTS in part and DISMISSES in part without prejudice Defendant Alan D. Marriner's Motion in Limine to Exclude Any Evidence of the Existence of Insurance (ECF No. 33).

The Court GRANTS in part and DENIES in part Defendant Alan D. Marriner's Motion in Limine to Exclude Evidence Proffered Through the Deposition of Paul McFaraland [sic] (ECF No. 39).

The Court GRANTS in part and DISMISSES in part without prejudice Plaintiff's Motion in Limine Regarding Treatment for Alcohol Abuse (ECF No. 34).

The Court DISMISSES without prejudice Plaintiff's Motion in Limine Regarding Child Support Obligation (ECF No. 35).

The Court GRANTS Plaintiff's Motion in Limine Regarding Collateral Source Rule (ECF No. 36).

The Court GRANTS in part and DISMISSES in part without prejudice Plaintiff's Motion in Limine Regarding Criminal Convictions (ECF No. 37).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE


Dated this 28th day of December, 2012